IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                                       No. 21-cr-00559-JCH

ELOY ROMERO,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Defendant Eloy Romero faces charges for possessing drugs with intent to distribute and for possessing a firearm in furtherance of a drug-trafficking crime. This memorandum opinion and order addresses the *United States' Motion in Limine to Preclude Defendant's Admission or Reference to His Out-of-Court Statements* (ECF No. 101).

**I.**    **Background**

The Court incorporates the background facts from its memorandum opinion and order denying Mr. Romero's motion to suppress. *See* Mem. Op. & Order 1-14 (ECF No. 51). The following summarized facts are useful.

On February 25, 2021, Albuquerque Police Department officers pulled over Mr. Romero, who was driving a car. *See* U.S.'s Mot. in Lim. 1 (ECF No. 101). During the traffic stop, the police officers and Mr. Romero had a verbal exchange. A lapel camera videoed this exchange. Printed here is what Mr. Romero identifies as pertinent. *See* Def.'s Resp. 2-3 (ECF No. 103).

    Police Officer 1 ("PO1"): Are you in a hurry?
    Mr. Romero ("ER"): Uh, I kind of am, yeah.
    PO1:   Yeah. Where you coming from?
    ER:    Uh, well I was there at Mariscos cause I-I just pulled over there to pull out a fuse
           in my car.
    PO1:   Okay so prior to that?

> ER: Prior to that I was coming from the mall because or from, um, Depot, Home Depot cause I was looking for the fuses over there.
> PO1: So that's just why you drove?
> ER: Yes, yes I had to pull over cause I knew it was empty back there, you know what I mean, so I just wanted to, if I could put that, it's under there, it's under the dash that's where the fuse is at.
> PO1: Okay well I'll be right back alright.
> . . . .

Def.'s Ex. A, at 2-3 (ECF No. 103-1).

> Police Officer 2 ("PO2"): Okay well here's the thing. Let us figure out what we're gonna do, um, but you can't be operating this car with no paperwork, no driver's license, no nothing it doesn't work that way.
> ER: Okay cause it's-it's my buddy's car so it should have paperwork.
> PO2: Where's the paperwork at?
> ER: It should be in the glove.
> . . . .

*Id.* at 5.

> PO1: Okay, alright we'll get it all figured out. Is this all your stuff in here in the car?
> ER: Uh, mostly yeah.
> PO1: Well who's would it, who's would it be if not …
> ER: Like-like the kid (INAUDIBLE - ROAD NOISE)
> PO2: Do you even know your buddy's name?
> ER: Yes.
> PO2: What's his name?
> ER: Isaac, I forgot, Isaac and Bertha, uh, it starts with an O, it's Mexican, I don't know, I'm not sure.
> PO2: How long have you been driving the vehicle?
> ER: Uh, like a couple of weeks at least.
> PO2: And they just said, hey you want to use this vehicle for two weeks or how did that work out?
> ER: No, I'm-I'm actually trying to buy it from him like I said.
> PO2: So how do you, how well do you know them?
> ER: I know them well, pretty well.
> PO2: But you don't know their last name.
> ER: What's that I'm sorry.
> PO2: I said but you don't know their last name?
> ER: It's like Ortega or-or (inaudible).
> PO2: Okay. How do you know them?
> ER: How do I know them? Uh, I know them cause they're a friend of a friend that's why he was gonna sell me the car, that's why I know that, what's going on, you know what I mean?
> . . . .

2

*Id.* at 5-6.

> PO2: He has the title but you have no insurance on it, no nothing.
> ER: No, there's no other paperwork?
> PO2: No. What are you doing with the title?
> ER: I said he-he's selling it, I'm trying to buy it from him actually or in the process of buying it from him . . .
> PO2: Is this your backpack?
> ER: Uh, no.
> PO2: Whose backpack is this?
> ER: I don't know.
> PO2: Never seen it before? Huh?
> ER: No.
> PO2: What's in it?
> ER: It has to be from my buddy's house, I don't know where it came from.
> PO2: But you've had the car for two weeks you said.
> ER: Yeah, two weeks but at night I still see him periodically, you know what I mean? Like I kind of stay with him like.
> . . . .

*Id.* at 7.

Mr. Romero did not identify the following excerpt as pertinent, although it matters for the United States' motion:

> PO1: Okay give me your driver's license, registration and insurance please. Do you have any firearms in the vehicle? Dude, your driving's ridiculous.
> ER: Uh, I only have my social security card.

*Id.* at 9.

## II. Discussion

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *United States v. Lovato*, 950 F.3d 1337, 1341 (10th Cir. 2020) (quoting *United States v. Collins*, 575 F.3d 1069, 1073 (10th Cir. 2009). If a statement is offered to prove something other than the truth of the matter asserted, then it is not hearsay. *See United States v. Ledford*, 443 F.3d 702, 707 (10th Cir. 2005), *abrogated on other grounds by Henderson v. United States*, 575 U.S. 622 (2015). The Federal Rules of

Evidence prohibit the admission of hearsay, subject to certain exemptions and exceptions. *See* Fed. R. Evid. 801-804; *Lovato*, 950 F.3d at 1341. One exemption is for an opposing party's statements. *See* Fed. R. Evid. 801(d)(2).

Pointing to this exemption, the United States seeks to admit testimony related to the following statements: (1) Mr. Romero "said he only had his social security card"; and (2) Mr. Romero "said he had been driving the vehicle for a couple of weeks." *See* ECF No. 101, at 4. To be sure, both statements were made outside of court. And the United States is offering these statements to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c). But Mr. Romero— the United States' opposing party—was the speaker. So these statements are exempt from the definition of hearsay and are thus admissible. *See* Fed. R. Evid. 801(d)(2).

Mr. Romero objects to admitting these statements without admitting others. Worth noting is that many of the other statements risk being hearsay. Even so, Mr. Romero presents five reasons why he can introduce other statements or portions of the lapel-camera video.

1. **Federal Rule of Evidence 106 and the Rule of Completeness**

Federal Rule of Evidence 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Rule 106 partially codifies the common-law rule of completeness. *See United States v. Williston*, 862 F.3d 1023, 1038 (10th Cir. 2017). "[T]he rule 'functions as a defensive shield against potentially misleading evidence proffered by an opposing party.'" *Id.* (quoting *Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1089 (10th Cir. 2001)). But the rule is not a blank check to admit a whole recording after an adverse party admits just a segment. To the contrary, "[o]nly the portions of a statement that are relevant to an issue in the case and

4

necessary to explain or clarify the already-admitted portions need be admitted." *Id.* (citing *United States v. Lopez-Medina*, 596 F.3d 716, 735 (10th Cir. 2010)).

Four factors guide the admissibility of other statements after the admission of a recording's segment. *See id.* Courts consider whether the other statement "(1) explains the admitted evidence, (2) puts the admitted evidence in context, (3) does not itself mislead the jury, and (4) ensures that the jury can fairly and impartially understand the evidence." *Id.* at 1039.

As described above, the United States seeks to admit Mr. Romero's statements that he only had his social security card and that he had been driving the car for a couple of weeks. And the United States may do so because an opposing party's statements are exempt from the hearsay definition. But does the rule of completeness render Mr. Romero's other statements admissible?

Mr. Romero does not argue that other statements are necessary to explain his claim that he only had his social security card. He contends, however, that his statement about driving the vehicle for a couple of weeks is misleading if considered alone. *See* ECF No. 103, at 6. If the rule of completeness does not apply, then the jury will hear only the following:

> PO2: How long have you been driving the vehicle?
> ER: Uh, like a couple of weeks at least.

*See* ECF No. 103-1, at 6. But the Court agrees with Mr. Romero and will allow evidence of the following exchange:

> ER: Okay cause it's-it's my buddy's car so it should have paperwork.
> . . . .
> PO2: How long have you been driving the vehicle?
> ER: Uh, like a couple of weeks at least.
> PO2: And they just said, hey you want to use this vehicle for two weeks or how did that work out?
> ER: No, I'm-I'm actually trying to buy it from him like I said.

*See* ECF No. 103-1, at 5-6. The four-factor test explains why these extra statements are needed.

First, Mr. Romero's two statements about his friend's ownership of the car and his attempts to buy the car explain his statement about driving the car for at least a couple of weeks. And the two other statements provide context—the second factor. The police officer asked Mr. Romero how long he had been driving the car *after* hearing Mr. Romero say that the car belonged to his friend. The officer thus asked his question with the knowledge that Mr. Romero might not have exclusive control over the car. Third, the other statements do not themselves mislead the jury. And the parties can mitigate any risk of confusion. Subject to evidentiary rules, the parties may introduce evidence of the car's actual owner. And fourth, the other statements ensure that the jury can fairly and impartially examine the evidence. If the jury heard only Mr. Romero's statement that he had been driving the car for a couple of weeks, then the jury might infer that Mr. Romero had exclusive control over the car. And if Mr. Romero did not have exclusive control, then this inference would mislead the jury.

All in all, the rule of completeness allows for evidence of the exchange copied above. Admitting more than the copied exchange, however, both exceeds the fairness that the rule completeness protects and risks reliance on potentially untrustworthy hearsay.

**2.     Federal Rule of Evidence 803(3): Then-Existing Mental, Emotional, or Physical Condition**

Federal Rule of Evidence 803(3) provides a hearsay exception for "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)." This exception, however, may not allow admission of "a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." *Id.*

Mr. Romero claims that other statements from the lapel-camera video are admissible under this exception. *See* Fed. R. Evid. 803(3). Other than reciting legal rules, however, Mr. Romero

6

does not support this claim. For example, Mr. Romero does not explain his state of mind when he spoke with the APD officers. Nor does he specify a statement that identified this state of mind. As a result, this hearsay exception cannot help Mr. Romero.

### 3. Federal Rule of Evidence 803(1): Present Sense Impression

Federal Rule of Evidence 803(1) provides a hearsay exception for "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Mr. Romero asserts that this exception allows him to admit his own "statements regarding ownership of the backpack" and "statements about the location of the vehicle's documents." *See* ECF No. 103, at 7. Mr. Romero, however, does not identify an event or condition, does not specify a statement explaining an event or condition, and does not prove a tight temporal link between the event and the statement. Without more, therefore, Mr. Romero cannot invoke this hearsay exception to admit the other statements or portions of the lapel-camera video.

### 4. Fifth Amendment Right to Remain Silent

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Mr. Romero suggests that excluding other statements and the lapel-camera video will compel him to testify against his free will. *See* ECF No. 103, 8. Other than selective quotations from *Miranda v. Arizona*, however, Mr. Romero provides no support for this idea. *See id.* (quoting *Miranda v. Arizona*, 384 U.S. 436, 460 (1966)). And the Court is unaware of any authority that holds that excluding hearsay necessarily forces a defendant to testify in violation of the Fifth Amendment. Put simply, admitting non-hearsay and excluding hearsay does not demand self-incrimination.

### 5. Fifth Amendment Right to Due Process and Sixth Amendment Right to Compulsory Process

"The right to defend oneself in a criminal trial by presenting witnesses and other forms of evidence is, of course, a keystone of our legal system." *United States v. Hernandez-Hernandez*, 519 F.3d 1236, 1238 (10th Cir. 2008) (citing *Washington v. Texas*, 388 U.S. 14, 18-19 (1967)). But this right, grounded in the Fifth and Sixth Amendments, is not absolute. *See id.* A district court retains "substantial discretion in deciding whether to receive or exclude evidence at trial." *Id.* And "a defendant must comply with established rules of evidence." *Richmond v. Embry*, 122 F.3d 866, 871-72 (10th Cir. 1997). Thus, while a court "may not apply a rule of evidence mechanistically to defeat the ends of justice, in appropriate circumstances, the defendant's right to present relevant testimony may 'bow to accommodate other legitimate interests in the criminal trial process.'" *Id.* at 872 (quoting *Michigan v. Lucas*, 500 U.S. 145, 149 (1991)).

The two-prong test for whether exclusion violates a defendant's constitutional right to present a defense is whether "the proffered evidence is both relevant and material." *Hernandez-Hernandez*, 519 F.3d at 1239. At the relevance prong, courts consider whether the government's interests in exclusion outweigh a defendant's interest in admittance. *Richmond*, 122 F.3d at 872. "This inquiry includes an examination as to whether more traditional factors such as prejudice, issue and jury confusion weigh in favor of excluding the testimony." *Id.* And at the materiality prong, courts consider whether the evidence is "of such an exculpatory nature that its exclusion can be said to affect a trial's outcome." *Hernandez-Hernandez*, 519 F.3d at 1239.

Mr. Romero does no more than recite that he has a fundamental right to present a defense and state in conclusory terms that excluding the lapel-camera video would violate this right. He does not explain how his interests in admitting the video outweigh potential prejudice, including

8

the risk of untrustworthy hearsay. Nor does he explain why the lapel-camera video is vital to his defense. Mr. Romero's right to present a defense does not compel the video's admission.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that the *United States' Motion in Limine to Preclude Defendant's Admission or Reference to His Out-of-Court Statements* (**ECF No. 101**) is **GRANTED IN PART AND DENIED IN PART**:

- The motion is **denied** in that, should the United States introduce Mr. Romero's statement that he had been driving the vehicle "a couple of weeks at least," then the Court will allow Mr. Romero to admit the additional statements in the following exchange:

  ER:  Okay cause it's-it's my buddy's car so it should have paperwork.
  . . . .
  PO2: How long have you been driving the vehicle?
  ER:  Uh, like a couple of weeks at least.
  PO2: And they just said, hey you want to use this vehicle for two weeks or how did that work out?
  ER:  No, I'm-I'm actually trying to buy it from him like I said.

  *See* Def.'s Ex. A, at 6 (ECF No. 103-1).

- The motion is **granted** in that the Court will exclude other hearsay, not subject to exemption or exception, from Mr. Romero's verbal exchange with the APD officers.

_____
SENIOR UNITED STATES DISTRICT JUDGE