IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                              No. 21-cr-00559-JCH

ELOY ROMERO,

    Defendant.

## MEMORANDUM OPINION AND ORDER

On April 4, 2023, Defendant Eloy Romero filed a *Motion for Judgments of Acquittal or in the Alternative for a New Trial* (ECF No. 151). Defendant argues for entry of judgments of acquittal for insufficiency of the evidence as to all counts. Alternatively, he asserts he is entitled to a new trial because of ineffective assistance of counsel based on counsel's failure to object to the Government's request to remove a proposed jury instruction. The Government opposes the motion on both grounds. The Court, having considered the motion, arguments, evidence, and law, concludes that the motion for judgments of acquittal or for new trial should be denied.

## I.   FACTUAL BACKGROUND[1]

On February 25, 2021, Albuquerque Police Department ("APD") officers were working on a tactical operation in a high crime area in Albuquerque around Coors Boulevard ("Coors") and Interstate 40 that targeted crimes such as stolen vehicles, gun crimes, and narcotics trafficking. Around 9:00 p.m. that evening, officers observed a white Toyota Camry that they suspected as being a vehicle in progress of being stolen. An officer observed the driver of the Camry, later identified as Eloy Romero, parked near the Mariscos restaurant and shining a flashlight around the

---

[1]The following facts are those presented by testimony and exhibits at trial, viewed in the light most favorable to the Government.

steering column of the car, observations which he relayed to other officers over the radio. Based on the officers' experience, this behavior was consistent with auto theft, so they decided to stop the car.

Three marked police vehicles drove up behind the parked Toyota Camry in the parking lot. As soon as the marked units activated their emergency lights and sirens, the vehicle began to drive away slowly from the officers. APD Officer Albert Simmons was in his marked patrol unit when he saw the Toyota Camry in the parking lot approaching Coors. Simmons pulled behind the Camry and ran its license plate. He discovered the Camry had a suspended registration, an offense for which the vehicle could be stopped. Simmons witnessed the Camry turn south onto Coors from the parking lot, but it failed to use its right-turn signal, which Simmons believed to be a traffic infraction. At that point, Simmons initiated his lights and sirens.

Simmons then drove behind the Camry on Coors, but the vehicle failed to pull over despite his use of lights and sirens for about 15 seconds. Other vehicles in the traffic were reacting to Simmons' lights and sirens by stopping and pulling over, but not the Camry. Simmons then turned off his lights and sirens for safety reasons, but shortly thereafter he was advised to try another traffic stop. He initiated his emergency equipment once again. This time, the Toyota pulled over.

Simmons approached the driver, Mr. Romero, who was the sole occupant of the vehicle. Simmons asked Mr. Romero to provide his license, insurance, and registration, none of which he provided. Instead, Mr. Romero handed Simmons his social security card. When Simmons ran Mr. Romero's information, he learned Mr. Romero had a suspended driver's license. Simmons' records-check also revealed that the Camry was registered to Hector Garcia Salas.

Because the car appeared uninsured, officers decided to tow the vehicle. As part of the inventory search pursuant to department policy for towing vehicles, officers began searching the

car for items of value to document on the tow sheet. Detective Adrian Montoya found a black backpack in the rear seat of the car. When looking into the backpack, he saw a small lockbox. Detective Montoya took out the lockbox, manipulated it, and opened it without the need for a code. Within it he observed what he believed to be drugs and a firearm.

At that point, officers determined they should seal the vehicle and obtain a search warrant. In a subsequent search pursuant to a warrant on March 3, 2021, officers searched the black backpack and lockbox and found a bag of methamphetamine, baggies containing fentanyl pills, a box of .22 ammunition, a .22 caliber handgun in a holster with six rounds in the magazine, empty plastic baggies, and a digital scale. In the side pocket of the backpack, APD Officer Robert Blea found a document with a photograph of Mr. Romero's face but with a different name listed. Officer Simmons also found documents dated January 24, 2021, and February 4, 2021, in the driver's side door pocket with Eloy Romero's name on them. Officers observed numerous other items in the car, such as women's shoes, a cell phone, headphones, combs, and receipts, which they did not collect as evidence.

As Isaac Lopez testified at trial, he bought the Toyota Camry, registered in Hector Garcia Salas's name, from Mr. Garcia's son. Mr. Lopez admitted he did not put the car under his own name. Mr. Lopez stated that, approximately eight months later, he sold the car to Eloy Romero, who arrived with another individual to pick up the car. At that time, the car was in a clean condition. Mr. Lopez left none of his belongings in the car. He testified that Mr. Romero called him later to help him get the car out of impound.

Testimony established that Trial Exhibits 44, 45, 46, and 47 contained the drugs seized from the Toyota Camry on the night in question. DEA Senior Forensic Chemist Julia Mejia testified that Exhibit 44 contained 349.4 grams of 100% methamphetamine. According to DEA

Chemist Victor Bravenec, Exhibit 45 contained 141.56 grams, Exhibit 46 had 33.86 grams, and

Exhibit 47 had 27.64 grams; each of those exhibits contained fentanyl and acetaminophen; and

three tablets in Exhibit 45 also contained a small amount of caffeine. DEA Special Agent Joshua

Belida testified that the amount of methamphetamine and fentanyl seized in the case is consistent

with distribution amounts. He also testified that handguns are often used by drug traffickers to

protect themselves. Finally, Special Agent Ivar Hella's testimony established that the handgun

seized was capable of firing and was a semiautomatic .22-caliber pistol. Although DNA swabs

from the gun were taken and fingerprint analysis from the drug packaging was requested, no DNA

testing of the gun nor fingerprint analysis was performed.

## II.   PROCEDURAL HISTORY

This Court held a jury trial in this case on March 27 through March 30, 2023. The jury

convicted Defendant of all three counts: possession with intent to distribute 50 grams or more of

methamphetamine (Count 1); possession with intent to distribute 40 grams or more of a mixture

and substance containing a detectable amount of fentanyl (Count 2); and knowingly possessing a

firearm in furtherance of one or both of the drug trafficking crimes charged in Counts 1 and 2

(Count 3). (Verdict, ECF No. 149.)

Prior to trial, Defendant objected to the introduction into evidence of a temporary driver's

license with the name "Robert John Schmidt," which the United States asserted depicted Mr.

Romero. (*See* Def.'s Mot. in Lim. #3, at 4, ECF No. 78.) The Government argued that the driver's

license document was probative to show constructive possession of the backpack by Mr. Romero.

(Gov.'s Resp. 4, ECF No. 98.) The Court denied Defendant's motion in limine because the

significant probative value of the evidence was not substantially outweighed by its prejudicial

effect, and that "any potential prejudice can be mitigated with a limiting instruction to the jury."

(Mem. Op. and Order 7, ECF No. 108.)

Before trial, Defendant proposed a limiting instruction that stated that the jury was not to

consider the temporary driver's license evidence as evidence of guilt of the charged crimes, but

rather for the question of Defendant's identity and for no other purpose. (Def.'s Supp. JI,

Requested Instruction No. 19, ECF No. 131.) At trial, the Government introduced into evidence

the temporary driver's license bearing Mr. Romero's likeness but another person's name that an

officer found in the pocket of the backpack with the drugs and gun charged in the case. In its initial

packet of proposed Court's instructions that it gave to counsel, the Court included a limiting

instruction regarding the temporary driver's license evidence, but it was modified from

Defendant's proposed instruction. The Court held an informal conference on jury instructions off-

the-record with counsel in which it heard comments from counsel regarding the proposed

instructions. At that time, defense counsel argued that a limiting instruction was necessary.

In the proposed instructions the Court gave the parties prior to the formal jury instruction

conference, the Court included a limiting instruction that more broadly encompassed the permitted

uses set forth in Rule 404(b)(2). At the formal conference, the Government objected to the

instruction being given at all, arguing that the evidence was relevant to different elements of the

crimes, including possession, and that the Court's proposed instruction did not allow for all proper

uses. At that time, defense counsel stated that he had no objection to removing the instruction.

Despite the parties' agreement on the issue, the Court initially hesitated to remove the instruction

and said she would think about it. The Government then added that it objected to the phrase "and

for no other purpose." Defense counsel stated that if the Court was inclined to keep the instruction,

he believed the phrase should be included. After considering the issue, the Court began to state her

ruling. Defense counsel interrupted, noting that "maybe" we should leave in the instruction because of the Court's Rule 404(b) order. The Court explained that the evidence could be used by the jury for the possession element, and because both parties said they wanted the instruction out, the Court would take it out. The Court thus agreed to remove the instruction. Later, when asked if there were any final objections, defense counsel said he had no objections. Consequently, the jury was not given an instruction specific to the temporary driver's license evidence.

## III.    MOTION FOR JUDGMENT OF ACQUITTAL

Under Federal Rule of Criminal Procedure 29(a), the court on a defendant's motion at the close of evidence must enter a judgment of acquittal for any charged crime for which the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a). Even after a jury has returned a verdict, a defendant may renew a motion for judgment of acquittal within 14 days after a guilty verdict. Fed. R. Crim. P. 29(c)(1). In considering a motion for judgment of acquittal, the court must "ask whether a reasonable jury could find a defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government and drawing reasonable inferences therefrom." *United States v. Vigil*, 523 F.3d 1258, 1262 (10th Cir. 2008). A court conducting this inquiry does not weigh conflicting evidence or consider the credibility of witnesses, but instead determines whether the evidence, if believed, would establish each element of the crime. *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004). Examining all the evidence, including reasonable inferences, a court should acquit only if no rational jury could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Xiang*, 12 F.4th 1176, 1184 (10th Cir. 2021).

"To establish a violation of 21 U.S.C. § 841(a)(1), the Government must prove the defendant: (1) possessed the controlled substance; (2) knew he possessed the controlled substance;

and (3) intended to distribute or dispense the controlled substance." *United States v. McKissick*, 204 F.3d 1282, 1291 (10th Cir. 2000). Possession may be actual or constructive, the latter of which may be shown where the defendant knowingly has ownership, dominion, or control over the narcotics and the premises where the narcotics are found. *Id.*

The evidence, viewed in the light most favorable to the Government, was sufficient to prove all three elements beyond a reasonable doubt. Defendant was the driver and sole occupant of the vehicle in which the drugs and firearm were found, showing control over the car, the backpack that was in the back seat, and the contents within the backpack. The Government also presented evidence that Defendant bought the car from Isaac Lopez, and thus, that Defendant owned the car. Evidence of the documents found with Defendant's name in the car also indicated that Defendant had control over the vehicle. Testimony that the document with Mr. Romero's picture on it was found in the pocket of the backpack further connected Defendant to the narcotics and firearm found in the backpack and was evidence of his knowledge thereof. Moreover, the Government presented evidence that Mr. Romero failed to stop initially when police approached and followed the vehicle in their marked units with lights on, suggesting Mr. Romero's knowledge of the contents of the backpack and consciousness of guilt. The evidence of the large amounts of narcotics, the baggies, and the digital scale, combined with the testimony by Special Agent Joshua Belida, was enough that any rational trier of fact could have found intent to distribute the controlled substances beyond a reasonable doubt. The Court therefore concludes that the evidence was sufficient to convict Defendant of Counts 1 and 2.

As for Count 3, the Government had to prove that Defendant knowingly possessed a firearm in furtherance of one or both of the charged drug trafficking crimes committed by the Defendant. *See United States v. Jenkins*, 313 F.3d 549, 558-59 (10th Cir. 2002). "The 'in

furtherance of' element of § 924(c) requires the government to show that possession of the firearm furthered, promoted or advanced the drug trafficking crime." *Id.* at 559. "Relevant factors include 'the type of drug activity being conducted, the accessibility of the firearm, the type of firearm, the legal status of the firearm, whether the firearm is loaded, the proximity of the firearm to the drugs or drug profits, and the time and circumstances under which the firearm is found.'" *Id.* (quoting *United States v. Basham*, 268 F.3d 1199, 1208 (10th Cir. 2001)).

As discussed above, the evidence was sufficient for a reasonable jury to convict on the drug trafficking charges. For the same reasons given *supra*, the evidence was sufficient to show that Defendant possessed the handgun. While the presence of a firearm that is coincidental or unrelated to the crime is not enough to convict, here the United States presented enough evidence for the jury to find that the firearm furthered the drug trafficking crimes. The firearm was in the lockbox with the fentanyl, baggies, and a digital scale, and the lockbox was in the backpack that contained the methamphetamine and a box of ammunition of the matching caliber as the firearm. This evidence indicates the firearm facilitated or had the potential to facilitate the drug trafficking crime. Moreover, the United States introduced evidence that the firearm magazine contained ammunition, that the handgun operated as a firearm, that handguns are the most common type of gun seized in drug trafficking investigations, and that the value of the narcotics was substantial. The totality of the evidence was enough for a jury to find beyond a reasonable doubt that Defendant possessed the firearm in furtherance of the drug trafficking crimes. *Cf. United States v. Lott*, 310 F.3d 1231, 1247-48 (10th Cir. 2002) (affirming district court's denial of defendant's motion for acquittal on § 924(c)(1) charge where loaded pistol was found on driver's seat of car, and also found in car were various materials used to manufacture methamphetamine, officer saw defendant get in

8

driver's door and lean over driver's seat inside vehicle, and various documents found inside car had defendant's name on them).

## IV.    MOTION FOR NEW TRIAL

Defendant alternatively moves for a new trial under Rule 33, which gives the court authority to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A motion for new trial should be granted if, after weighing the evidence and the credibility of the witnesses, the court determines that the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred." *United States v. Garcia*, 182 F.3d 1165, 1170 (10th Cir. 1999) (internal quotations omitted). A court should grant a new trial motion only in exceptional cases when the evidence weighs heavily against the verdict. *United States v. Cesareo-Ayala*, 576 F.3d 1120, 1126 (10th Cir. 2009).

Defendant argues that the evidence at trial was insufficient to support a conviction. For the reasons given above, the Court disagrees and concludes that the evidence does not weigh heavily against the verdict. Nor does the verdict constitute a miscarriage of justice. Consequently, Defendant is not entitled to a new trial based on the strength of the evidence.

Defendant additionally contends that he is entitled to a new trial because defense counsel did not object to the removal of the proposed jury instruction concerning the jury's proper use of the evidence regarding the temporary driver's license. While Defendant initially requested an instruction about the temporary driver's license, Defendant subsequently changed tactics and expressly did not object to the Government's request that the Court remove the instruction on the topic. Defendant argues that his counsel was ineffective for failing to object to the Government's request to remove the proposed instruction.

Any error of sufficient magnitude to require reversal on appeal is a proper ground for granting a new trial under Rule 33. *United States v. Walters*, 89 F.Supp.2d 1206, 1213 (D. Kan. 2000). In examining errors, district courts should consider rules governing appellate review. *United States v. Thomas*, No. 13-CR-01874 MV, 2016 WL 9819560, *7 (D.N.M. Aug. 5, 2016). When a party fails to object to a jury instruction at trial, a court reviews for plain error. *United States v. Kalu*, 791 F.3d 1194, 1201 (10th Cir. 2015). Under plain error review, reversal is warranted only when (1) there was error; (2) the error was plain; (3) the error affected the defendant's substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.* An error is said to affect a substantial right when it has "a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)). An error "that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). The defendant bears the burden of showing there was plain error that warrants relief. *Kalu*, 791 F.3d at 1201.

To establish an ineffective assistance of counsel claim, a defendant must show that defense counsel's performance was deficient, and that the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defense counsel's performance is deficient if it falls below an objective standard of reasonableness as measured by professional norms. *United States v. Barrett*, 797 F.3d 1207, 1213 (10th Cir. 2015). This is a "demanding standard, requiring a showing that the performance was 'outside the wide range of professionally competent assistance.'" *Id.* As for the prejudice factor, a defendant must show that there was a reasonable probability that, but for defense counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 1214.

According to Rule 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. A court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice or confusion of the issues. Fed. R. Evid. 403. Rule 404(b) prohibits the admission of evidence of crimes, wrongs, or other acts to prove a person's character to show action that conforms to that character, but it allows evidence of other bad acts if admissible for other purposes, such as motive, opportunity, preparation, plan, intent, knowledge, absence of mistake, or lack of accident. *See* Fed. R. Evid. 404(b). Under Rule 404(b), evidence is admissible if (1) the evidence is offered for a proper purpose; (2) it is relevant; (3) its probative value is not substantially outweighed by its potential for unfair prejudice under Rule 403; and (4) the court gives a proper limiting instruction if it is requested by the defendant. *United States v. Moran*, 503 F.3d 1135, 1143-44 (10th Cir. 2007). Similarly, Rule 105 states that, where a court admits evidence admissible for one purpose, but not for another purpose, "the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105. Evidence of other bad acts should be admissible when those facts come in as *res gestae*— as part of the proof of the offense charged in the indictment or evidence that completes the story of the charged crime by proving its immediate context. *United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995) (quoting *United States v. Gano*, 560 F.2d 990, 993 (10th Cir. 1977), and *United States v. Masters*, 622 F.2d 83, 86 (4th Cir.1980)). A bright line does not always separate evidence that is admissible for one of the purposes specified in Rule 404(b) and *res gestae* evidence. *Id. Res gestae* evidence is also subject to Rule 403's balancing test. *United States v. Ford*, 613 F.3d 1263, 1268 (10th Cir. 2010).

The Government asserts that Rule 404(b) does not apply, because the driver's license document was located in the same backpack as the contraband, and thus is intrinsic evidence of the crime, not Rule 404(b) evidence. The temporary driver's license was found in the same backpack as the narcotics and firearm, and thus, it was highly relevant to the element of knowledge and constructive possession of the backpack. The evidence therefore may constitute intrinsic evidence. *Cf. Kimball*, 73 F.3d at 272 (concluding that defendant's inmate number on coffee pot was admissible as *res gestae* evidence of robbery, even though the jury would hear about his prior incarceration, because the coffee pot was recovered in his motel room along with a table containing an imprint of robbery demand note).

This Court nevertheless does not need to resolve definitively the issue of whether the evidence was *res gestae*, because even if the evidence constitutes Rule 404(b) evidence, there was no error in its admission or in failing to give a limiting instruction where Defendant did not ultimately request one. The evidence of the temporary driver's license was admissible for the purpose of proving Mr. Romero's constructive possession of the backpack and knowledge of its contents. The evidence was relevant, and its probative value greatly outweighed any potential for unfair prejudice. Under Tenth Circuit law, the court should give a limiting instruction for Rule 404(b) evidence *when requested by the defendant*. But here, Defendant in the on-the-record final jury instruction conference agreed to remove the Court's proposed Rule 404(b) instruction. Because Defendant did not ultimately request a limiting instruction, there was no violation of Rule 404(b) or Rule 105. The Court is thus not convinced that the agreed-upon removal of the instruction was error or that the error was plain.

Although Defendant now argues that his counsel made a mistake in agreeing to the removal, the decision to remove the jury instruction does not warrant a new trial because it was

12

not deficient and did not affect substantial rights. Regarding the temporary driver's license, the Government focused on the fact that Defendant's photograph was on it, linking him to the backpack. The Government's arguments did not concentrate on the potential wrongfulness or criminality in the fact that the name on the document was not Mr. Romero's. That defense counsel decided not to request a jury instruction that might highlight the driver's license evidence is not a completely unreasonable trial strategy. Moreover, the proposed instruction by the Court did not clearly state that the jury could consider the evidence for the proper purpose of the possession element, and thus was arguably not the appropriately worded instruction to give. Defense counsel thus did not clearly err in agreeing to the removal of an instruction that did not account for all the proper purposes of the evidence. That defense counsel did not ultimately move to include a limiting instruction concerning the proper use of the temporary driver's license evidence did not have a substantial influence on the outcome and does not leave the Court in grave doubt as to whether it had such an effect. Nor does the Court find defense counsel's performance deficient. To the contrary, defense counsel gave a robust, thorough, and rigorous defense. The decision to agree to the removal of the instruction did not prejudice the defense or fall below an objective standard of reasonableness. Because the Court disagrees that defense counsel was ineffective, that plain error occurred in the trial, and that the interest of justice warrants a new trial, the Court will deny Defendant's motion for a new trial.

**IT IS THEREFORE ORDERED** that Defendant's *Motion for Judgments of Acquittal or in the Alternative for a New Trial* (**ECF No. 151**) is **DENIED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**